**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH I. MAMMAN, | : | CONSOLIDATED |
| | : | CIVIL ACTION NO. 06-2688 (MLC) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| ELAINE CHAO, SECRETARY, | : | |
| U.S. DEPARTMENT OF LABOR, | : | |
| | : | |
| Defendant. | : | |

**COOPER, District Judge**

Plaintiff, Joseph I. Mamman ("Mamman") brought this action against the Secretary of the United States Department of Labor ("DOL"), alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and, in effect, the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). (Dkt. entry no. 9, Am. Compl.) Mamman also seeks judicial review of the proceedings before the Merit Systems Protection Board ("MSPB"), which affirmed DOL's termination of his employment, finding both that the charges leading to the termination were substantiated and that Mamman had not proved that the termination occurred due to unlawful discrimination or retaliation. See 5 U.S.C. § 7703 (providing for judicial review of MSPB decisions).

DOL moved for summary judgment in its favor pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 80,

Def. Mot. for Summ. J.)  The Court heard oral argument on the motion on March 10, 2011, and denied the motion without prejudice.  (Dkt. entry no. 96, 3-10-11 Order.)  However, the Court advised the parties that it intended "to identify and isolate the existing claims and get them accurately defined" before proceeding to trial on Mamman's discrimination claims and conducting an administrative appeal, and noted that in isolating the existing claims, it might reconsider the summary judgment motion.  (Dkt. entry no. 98, 3-10-11 Hr'g Tr. at 46:6-20.)

The Court now considers whether Mamman's allegations that certain DOL employees provided perjured testimony or suborned perjury during the MSPB proceedings held on April 19-20, 2006, as retaliation for Mamman's undertaking protected Equal Employment Opportunity ("EEO") activity, should remain in the case going forward to trial.  (Am. Compl. at ¶¶ 35-44.)  For the following reasons, we conclude that they should not, and will be limited to the part of the case comprising this Court's review of the administrative proceedings below pursuant to the deferential standard of review provided in 5 U.S.C. § 7703(c), not the part of the case that will presumably go to a jury for trial de novo.

### BACKGROUND

This is a "mixed" case, in that Mamman both challenges DOL's personnel action, as appealed to the MSPB,  and alleges that the basis for his termination was unlawful discrimination.  See 5

U.S.C. §§ 7702(a)(1), 7703(b)(2); <u>Kligman v. IRS</u>, 272 Fed.Appx. 166, 168-69 (3d Cir. 2008); <u>see generally</u> <u>Bush v. Lucas</u>, 462 U.S. 367, 385-90 (1983); <u>Kean v. Stone</u>, 926 F.2d 276, 281-89 (3d Cir. 1991) (discussing scheme for judicial review of MSPB decisions pursuant to Civil Service Reform Act of 1978 and Federal Courts Improvement Act of 1982).  "In a mixed case, the complainant is entitled to trial <u>de novo</u>" on the discrimination claim, whereas the MSPB's decision concerning the agency personnel action is reviewed under a deferential standard.  <u>New v. Principi</u>, No. 99-3782, 2003 WL 22331748, at *5 (E.D. Pa. Oct. 8, 2003); <u>see</u> 5 U.S.C. § 7703(c) (reviewing court should uphold MSPB decision unless "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence"); <u>Estate of Schultz v. Potter</u>, 349 Fed.Appx. 712, 714 n.1 (3d Cir. 2009).

 Mamman was employed by DOL as an Equal Opportunity Specialist in the Mountainside, New Jersey, district office, which is located in DOL's Northeast Region.  (Am. Compl. at ¶¶ 5-7.)  A DOL audit of employees' government credit card use in August 2004 revealed that seven employees within the Northeast Region, including Mamman, had misused their government credit cards.  (<u>Id.</u> at ¶¶ 10-12.)  Mamman's misuse of his government credit card involved regularly taking unauthorized cash advances,

3

each of which he timely repaid. In response to the audit, Mamman tendered his resignation on August 31, 2004, to be effective October 1, 2004. (Id. at ¶¶ 17-18.) Apparently discovering that no one else accused of credit card misuse had been terminated by DOL, Mamman attempted to withdraw his resignation, but DOL declined to allow him to do so, and his employment was terminated on October 1, 2004. (Id. at ¶¶ 18-20.)

Mamman appealed his termination to the MSPB, alleging that DOL's refusal to allow him to withdraw his resignation was motivated by discrimination on the basis of his national origin, gender, age, and race. (Id. at ¶ 21.) That appeal was identified as MSPB Docket No. NY-0752-05-0024-I-1. (Id.) While that appeal was pending but before any hearing occurred, DOL voluntarily reinstated Mamman with back pay, and the Administrative Judge, determining that he had jurisdiction over the discrimination claim notwithstanding the mootness of the personnel action aspect of the appeal, issued a finding of no discrimination. (Id. at ¶¶ 22-23; dkt. entry no. 80, Ruymann Decl., Ex. 1, 4-21-05 MSPB Initial Decision.)

Mamman alleges that after he returned to work, he encountered "harassment . . . and reprisal for his prior EEO activities," and sought precomplaint counseling. (Am. Compl. at ¶ 26.) Mamman was presented with a Notice of Proposed Removal on April 21, 2005, setting forth thirty-five specifications of

misuse of his government credit card, four specifications of failure to respond to his supervisor while on "flexiplace," and twelve specifications of misuse of his government telephone line. (Id. at ¶ 27.) Mamman's supervisor issued the final Removal Decision on June 20, 2005, effective July 8, 2005. (Id. at ¶ 28.) He appealed his termination to the MSPB; that appeal was designated MSPB Docket No. NY-0752-05-0323-I-2. (Ruymann Decl., Ex. 2, 5-25-06 MSPB Initial Decision.) The Administrative Judge assigned to that appeal held a hearing on April 19-20, 2006, and issued an Initial Decision, dated May 25, 2006, affirming DOL's personnel action on the basis that the charges of credit card and telephone misuse and flexiplace violations were sustained. (Id.; dkt. entry no. 80, Def. Stmt. of Undisputed Facts at ¶¶ 62-63.) The Administrative Judge further found that Mamman had failed to establish his affirmative defenses of discrimination and retaliation. (5-25-06 MSPB Initial Decision; Def. Stmt. of Undisputed Facts at ¶¶ 64-65.) Mamman was unsuccessful in his appeals of the 5-25-06 Initial Decision to the MSPB and the Equal Employment Opportunity Commission ("EEOC"). (Def. Stmt. of Undisputed Facts at ¶¶ 68-69; Am. Compl., Ex. A, 10-6-06 MSPB Final Order & 12-19-06 EEOC Decision affirming 5-25-06 Initial Decision.)

Mamman filed the Complaint in this action on June 15, 2006, seeking review of the finding of no discrimination in light of

his claim that "DOL's sole reason for not accepting the withdrawal of his resignation was to discriminate against him as compared to younger, non-Nigerian and female employees, and to discriminate against him based on his prior EEO activity." (Dkt. entry no. 1, Compl. at ¶ 22.)

Mamman now contends, <u>inter</u> <u>alia</u>, that witnesses appearing at the April 19-20, 2006 MSPB hearing on behalf of DOL "engaged in a conspiracy to cover up the true events leading to Mr. Mamman's termination," "conspired to lie under oath" and "provided perjured testimony" at that administrative hearing, and that the attorney representing DOL "knew the testimony was perjured and was guilty of subordination [sic] of perjury." (Am. Compl. at ¶¶ 35-43.) Mamman first made these allegations in a complaint filed with DOL's Civil Rights Center ("CRC") on July 20, 2006, which CRC dismissed for failure to state an actionable claim under the EEO regulations and because the "allegations were raised in the course of proceedings before the . . . MSPB" and therefore considered a collateral attack on an independent adjudicatory process. (Ruymann Decl., Ex. 5, 9-15-06 Letter from CRC to Mamman re: CRC Complaint No. 06-02-098.) He brought a second action in this Court, docketed as Civil Action No. 06-6084 and subsequently consolidated with the instant action, alleging that DOL management officials or representatives "were discriminatory against him on the basis reprisal [sic] for his prior EEO

6

activity, which consisted of two MSPB cases and one EEO case," by lying under oath or suborning perjury during the April 19-20, 2006 MSPB hearing. Mamman v. Chao, Civil Action No. 06-6084, dkt. entry no. 1, Compl. at ¶ 45. The Amended Complaint in this action, filed on January 16, 2007, incorporates the allegations made in the Complaint filed in Civil Action No. 06-6084 and reflects that the two actions were consolidated by order dated January 9, 2007. (Dkt. entry no. 8, 1-9-07 Order; Am. Compl.)[1]

## DISCUSSION

### I. Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here. Rule 56 provides that summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor." United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

---

[1] The consolidation of the two actions and amendment of the Complaint also coincided with the thirty-day period afforded by the EEOC Decision of December 19, 2006, to file a civil action seeking review of the MSPB proceedings in MSPB Docket No. NY-0752-05-0323-I-2. (Am. Compl., Ex. A, 12-19-06 EEOC Decision.)

7

Having already denied the defendant's motion for summary judgment without prejudice, the Court at this juncture considers granting summary judgment only as to the part of Mamman's claims alleging that certain DOL employees retaliated against him by providing perjured testimony or suborning perjury at his April 19-20, 2006 MSPB hearing (hereinafter the "perjury claims"). See Fed.R.Civ.P. 56(a) (stating that a party may seek, and a court may grant, summary judgment on a "claim or defense—or . . . part of [a] claim or defense") (emphasis added). The Court provided the parties notice of its intention to consider granting summary judgment as to the perjury claims during a status conference held on April 18, 2011, and ordered the parties to show cause why the Court should not grant the relief discussed herein. (Dkt. entry no. 99, Order to Show Cause.) See Fed.R.Civ.P. 56(f) (stating that a court may consider and grant summary judgment independent of a motion, so long as the court provides the parties notice and a reasonable time to respond). The parties have responded, and the issue is ripe for adjudication. (Dkt. entry nos. 101-103, Pl. Response; dkt. entry no. 104, Def. Response.)

**II. The Perjury Claims**

Mamman appears to be pursuing a novel type of retaliation claim within his mixed case in alleging that DOL employees provided perjured testimony at his MSPB hearing as a means of retaliating against him. He has not directed the Court to any

8

precedent for the recognition of such a claim, and the Court has never come across a cause of action against an employer in a Title VII action based on the alleged perjury of individuals in the workplace called upon to testify in post-termination proceedings.  The Court discerns several reasons why such claims have not been recognized, including the fact that perjury is a crime, and falsely testifying witnesses are subject to criminal prosecution under 18 U.S.C. § 1621; litigation privileges or absolute immunities typically insulate attorneys and witnesses for conduct during judicial or quasi-judicial proceedings; and because, quite simply, "[t]he plaintiff's chance to attack the veracity of evidence presented before the MSPB was before the MSPB."  Ketchum v. U.S. Dep't of Trans., 707 F.Supp. 1220, 1221 (D. Nev. 1988).  For the reasons that follow, the Court declines Mamman's invitation to extend the existing employment discrimination jurisprudence to recognize a cause of action for retaliatory perjury or suborning perjury.[2]

### A.  Title VII is Not a Cause of Action for Perjury

The Supreme Court of the United States has observed that "Title VII is not a cause of action for perjury."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 521 (1993) (holding that trier

---

[2] This case has progressed to a procedural posture of summary judgment, and we approach the issues discussed herein under that standard.  We express no opinion as to whether the perjury claim could or should have been dismissed for failure to state a claim under Rule 12(b)(6).

of fact's rejection of employer's proffered legitimate nondiscriminatory reason for challenged employment action does not entitle employee to judgment as a matter of law); see also Shamoon v. Potter, No. 05-4508, 2006 WL 3051771, at *3 (E.D.N.Y. Oct. 25, 2006) (dismissing plaintiff's Title VII "perjury" claim against attorney who represented United States Postal Service in plaintiff's administrative proceedings, on basis that "Title VII does not provide a private cause of action for perjury").  In the Title VII context, "there is no justification for assuming . . . that those employers whose evidence is disbelieved are perjurers and liars," taking into account that

> the defendant is ordinarily not an individual but a company, which must rely upon the statement of an employee--often a relatively low-level employee--as to the central fact; and that central fact is not a physical occurrence, but rather that employee's state of mind.  To say that the company which in good faith introduces such testimony, or even the testifying employee himself, becomes a liar and a perjurer when the testimony is not believed, is nothing short of absurd.

Hicks, 509 U.S. at 520-21.  The Hicks Court further observed that while Title VII does not encompass a civil cause of action for perjury, there are other civil and criminal remedies available for such conduct, including but not limited to sanctions under Rule 11 or Rule 56(h) and criminal prosecution under 18 U.S.C. § 1621.  Id. at 521-22.  In this case, the trier of fact did not disbelieve DOL's evidence; the Administrative Judge presiding

over the April 19-20, 2006 MSPB hearing generally accepted DOL's version of events and rejected Mamman's allegations of discrimination and retaliation. (5-25-06 MSPB Initial Decision at 13-17.) We therefore find there is even less of a justification for allowing the perjury claims to proceed in this action than may have been present in Hicks.

Even more broadly, it has been said that a claim that defendants "committed perjury and conspired to suborn perjury" did not "give rise to a civil cause of action" or "support an action for damages under the civil rights laws." Safeguard Mut. Ins. Co. v. Miller, 477 F.Supp. 299, 307 (E.D. Pa. 1979) (granting summary judgment for failure to state a cause of action under 42 U.S.C. § 1983 ["Section 1983"] on insurance company's claim against employees of state insurance agency alleging that defendants conspired to deprive insurance company of its civil rights by intimidating witnesses and misleading the court through false or irrelevant information). The perjury claims asserted by Mamman do not constitute an independent cause of action for retaliation; therefore, the Court finds that they are more properly addressed as part of the administrative appeal of the MSPB proceedings, as opposed to the part of the case to be tried before a jury, under 5 U.S.C. § 7703(c). See Duncan v. Henderson, No. 99-1328, 2000 WL 791796, at *4 (D. Or. May 8, 2000) ("[A]ny issues plaintiff had about fraud, mishandling and

11

perjury in his MSPB cases should have been raised in administrative and/or judicial appeals of those decisions.").

### B. Analogous Immunities for Prosecutors and Witnesses

It is clear to the Court that under well-settled law, if the individual DOL employees accused by Mamman of lying at his MSPB hearing had been sued in their individual capacities, they would be absolutely immune from suit with respect to the perjury claims.[3]  The DOL employees who testified at the MSPB hearing as to the facts leading up to Mamman's termination would be entitled to witness immunity.  Briscoe v. LaHue, 460 U.S. 325, 345-46 (1983) (expressing policy consideration that the public interest in facilitating the truth-seeking function of the judicial process by immunizing witnesses from reprisals by a disgruntled litigant outweighs the threat to the litigant that the witnesses may testify untruthfully).  This common law immunity applies equally to public officials and private citizens.  Id. at 336 n.15.

The DOL attorney whom Mamman alleges suborned perjury in representing DOL during the MSPB hearing would be absolutely immune from suit, as well.  Butz v. Economou, 438 U.S. 478, 517

---

[3] Mamman appropriately named the Secretary of DOL as the defendant in this action.  The proper defendant in an employment discrimination action brought by a federal employee is "the head of the department, agency, or unit," and other individual employees, even employees having supervisory control over the plaintiff, are not proper defendants under Title VII.  42 U.S.C. § 2000e-16(c); see Shamoon, 2006 WL 3051771, at *2.

12

(1978) (holding that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence"); cf. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976) (holding that a state prosecuting attorney acting within the scope of his or her duties in initiating and pursuing a criminal prosecution is not amenable to suit under Section 1983).

The Court finds that the same considerations supporting the recognition of witness and prosecutorial immunity in Section 1983 cases counsel against allowing Mamman to pursue a cause of action for retaliation with respect to the perjury claims insofar as asserted as part of the discrimination aspect of his suit.  This is because

> the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.  The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges.  Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. . . . Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury.  Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error. . . .

13

> [A]djudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.

Butz, 438 U.S. at 512-13.  The Court finds no justification for subjecting DOL to a claim based on litigation conduct from which the individuals involved would be absolutely immune if sued individually, just by reason of the fact that the Civil Service Reform Act preempts Mamman's ability to seek relief under Section 1983 or its counterpart for seeking redress against persons acting under color of federal authority, Bivens v. Six Unknown Named Agents of FBI, 403 U.S. 388 (1971).  See Lucas, 462 U.S. at 372, 387-90.

### C. The Perjury Claims Do Not Fall Within the Scope of Actionable Retaliation

DOL argued in support of its motion for summary judgment that the perjury claims do not assert a materially adverse employment action so as to constitute actionable retaliation under either Title VII or the ADEA.  (Dkt. entry no. 80, Def. Br. at 17-26.)  To state a claim for retaliation, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, . . . mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  DOL points out that the purpose of the anti-retaliation provisions of Title VII is "maintaining

unfettered access to statutory remedial mechanisms," and contends that this purpose was not thwarted with respect to the alleged perjurious litigation conduct of DOL employees insofar as the alleged conduct took place at the MSPB proceeding itself, foreclosing any inference that the alleged conduct might have dissuaded Mamman from pursuing his discrimination claim in the first place.  (Def. Br. at 21.)

    We find that the litigation conduct alleged here cannot constitute an independent cause of action for retaliation under Title VII or the ADEA.  "[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by" Title VII or other statutes prohibiting discrimination.  Steffes v. Stepan Co., 144 F.3d 1070, 1075-76 (7th Cir. 1998); see also McKenzie v. Ill. Dep't of Trans., 92 F.3d 473, 486 (7th Cir. 1996) (affirming summary judgment in favor of employer and observing that plaintiff's claim that employer retaliated against her by instructing other employees to obstruct her sex discrimination suit "is inseparable from the litigation of the claim" and therefore "a matter to be resolved pursuant to court rules, not by Title VII").  We find this reasoning persuasive in light of the standard for actionable retaliation articulated in Burlington Northern & Santa Fe Railway.

    The subject matter of the alleged perjury, a Draft Notice of Removal presented to Mamman sometime after the audit revealed his

credit card misuse but before Mamman tendered his resignation on August 31, 2004 ("August 2004 Draft Notice"), has in fact been addressed in the course of discovery in this action. It was the subject of a motion for sanctions on the basis of spoliation of evidence, on which the Magistrate Judge heard oral argument and issued a written Order on February 4, 2010. (Dkt. entry no. 67, 2-4-10 Order on Mot. for Spoliation Sanctions at 6-9 (finding that destruction of the August 2004 Draft Notice was not intentional or deliberate, denying plaintiff's motion for an adverse inference, and agreeing with DOL that the August 2004 Draft Notice would not establish anything with regard to Mamman's retaliation claim); dkt. entry no. 75, 4-26-10 Order (denying plaintiff's motion for reconsideration of the 2-4-10 Order); Am. Compl. at ¶¶ 35-44 (alleging that various DOL employees lied during MSPB hearings as to existence, authorship, and content of August 2004 Draft Notice); <u>see</u> dkt. entry no. 66, 12-1-10 Hr'g Tr. at 25:11-25.) Mamman's response to the Court's Order to Show Cause why it should not enter judgment in favor of DOL on his perjury claims simply re-hashes the issues decided by the Magistrate Judge on Mamman's spoliation motion. (Pl. Response at 1-2, 4-10.) In light of the Magistrate Judge's determination that destruction of the August 2004 Draft Notice was neither intentional nor deliberate, Mamman's contentions surrounding that document cannot serve as "[t]he thrust of Mamman's retaliation claim." (Pl. Response at 8.)

Recognizing Mamman's perjury claims as an independent cause of action would necessarily imply that the alleged perjury would have dissuaded a reasonable person from seeking redress for discrimination, which is clearly not the case.  Mamman has had ample opportunity in the MSPB proceedings as well as the discovery process in this case to address his dissatisfaction with DOL witnesses and counsel.  (See Def. Br. at 22 (noting that Mamman moved for sanctions in MSPB Docket No. NY-0752-05-0323-I-2).)  There is simply no legal basis for Mamman to collaterally attack the litigation conduct of DOL witnesses and counsel by means of an independent cause of action for retaliation, when he has availed himself of the appropriate administrative and judicial mechanisms for challenging such conduct.

## CONCLUSION

For the foregoing reasons, the Court concludes that even accepting Mamman's factual allegations regarding perjury as true, and viewing the record in the light most favorable to Mamman, DOL is entitled to judgment in its favor to the extent the Amended Complaint asserts a claim for retaliation based on the litigation conduct of DOL employees at the April 19-20, 2006 MSPB hearing regarding the August 2004 Draft Notice.  The Court will issue an appropriate order.

        s/ Mary L. Cooper  
        **MARY L. COOPER**  
        United States District Judge

Dated:    May 12, 2011