**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH I. MAMMAN, | CIVIL ACTION NO. 06-2688 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. |  |
| HILDA L. SOLIS, Secretary, U.S. Department of Labor, |  |
| Defendant. |  |

**COOPER, District Judge**

Plaintiff, Joseph I. Mamman ("Mamman"), brought this action against the Secretary of the United States Department of Labor ("DOL"), alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and, in effect, the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"). (See dkt. entry no. 9, Am. Compl.) Mamman also seeks judicial review of the proceedings before the Merit Systems Protection Board ("MSPB"), which affirmed DOL's termination of his employment, finding both that the charges leading to the termination were substantiated and that Mamman had not proved that the termination occurred due to unlawful discrimination or retaliation. (See id. at ¶¶ 23-24.) See also 5 U.S.C. § 7703 (providing for judicial review of MSPB decisions).

DOL moved for summary judgment in its favor on all of Mamman's claims pursuant to Federal Rule of Civil Procedure ("Rule") 56. (See dkt. entry no. 80, Def. Mot. for Summ. J.)  The Court heard oral argument on the motion on March 10, 2011, and denied the motion without prejudice.  (Dkt. entry no. 96, 3-10-11 Order.)  However, the Court advised the parties that it intended "to identify and isolate the existing claims and get them accurately defined" before proceeding to trial on Mamman's discrimination claims and conducting an administrative appeal, and noted that, in isolating the existing claims, it might reconsider the summary judgment motion.  (See dkt. entry no. 98, 3-10-11 Hr'g Tr. at 46:6-20.)

The case proceeded to trial, and the jury returned a verdict against Mamman and in favor of DOL on both the ADEA and Title VII claims.  (See dkt. entry no. 156, Verdict Form.)  After the jury rendered its verdict, the Court entered judgment in favor of DOL "for no cause of action on issues denominated as Questions 1, 2 and 4 on the Verdict Form".  (Dkt. entry no. 157, J.)  The Court noted that the issues of discrimination on the basis of age and related retaliation, as raised in Questions 3 and 5, were not triable by jury, and that the jury had "rendered an advisory

verdict only" on those questions, leaving the final resolution of those issues for the Court.  (Id.)  See also Fed.R.Civ.P. 52(a).[1]

The Court now considers DOL's renewed motion for summary judgment in its favor with respect to the issues of age discrimination and retaliation raised in Mamman's appeal from the MSPB decision, and for an affirmance of the MSPB decision.  (See dkt. entry no. 172, Not. of Mot. for Summ. J. at 1 ("the Motion").) DOL submitted supplemental briefing in support of the Motion, but Mamman chose "not to file a specific written response" to the Motion, and instead "stands by his previously filed submissions of record."  (Dkt. entry no. 171, Supplemental Mem. in Supp. of Def.'s Mot. for Summ. J. ("DOL Supp. Mem."); dkt. entry no. 173, 4-5-13 Pl. Letter.)  For the following reasons, the Court concurs with the jury's advisory verdict that DOL is entitled to judgment in its favor on the age discrimination and retaliation claims, and also concludes that the MSPB decision should be affirmed.

## BACKGROUND

This is a "mixed" case, as Mamman both challenges DOL's personnel action, as appealed to the MSPB, and alleges that the basis for his termination was unlawful discrimination.  See 5 U.S.C. §§ 7702(a)(1), 7703(b)(2); Kligman v. IRS, 272 Fed.Appx.

---

[1] "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."  Fed.R.Civ.P. 52(a).

166, 168-69 (3d Cir. 2008); see generally Bush v. Lucas, 462 U.S. 367, 385-90 (1983); Kean v. Stone, 926 F.2d 276, 281-89 (3d Cir. 1991) (discussing scheme for judicial review of MSPB decisions). "In a mixed case, the complainant is entitled to trial de novo" on the discrimination claim, whereas the MSPB's decision concerning the agency personnel action is reviewed under a deferential standard. New v. Principi, No. 99-3782, 2003 WL 22331748, at *5 (E.D. Pa. Oct. 8, 2003); see 5 U.S.C. § 7703(c) (reviewing court should uphold MSPB decision unless "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence"); Estate of Schultz v. Potter, 349 Fed.Appx. 712, 714 n.1 (3d Cir. 2009).

The Court will provide a brief summary of the procedural history of the case, conduct a review of the administrative record, and present its findings of fact with respect to the age discrimination and retaliation claim.

## I.   Relevant Procedural History

Mamman was employed by DOL as an Equal Opportunity Specialist in the Office of Federal Contract Compliance Programs at the Mountainside, New Jersey, district office, which is located in DOL's Northeast Region. (See Am. Compl. at ¶¶ 5-7; dkt. entry no.

85-1, Pl. Counter-Statement of Material Facts at ¶ 1.)  A DOL audit
of employees' government credit card use in August 2004 revealed
that seven employees within the Northeast Region, including Mamman,
had misused their government credit cards.  (See Am. Compl. at ¶¶
10-12.)  Mamman's misuse of his government credit card involved
regularly taking unauthorized cash advances, each of which he
timely repaid.  In response to the audit, Mamman tendered his
resignation on August 31, 2004, to be effective October 1, 2004.
(See id. at ¶¶ 17-18.)  Apparently discovering that no one else
accused of credit card misuse had been terminated by DOL, Mamman
attempted to withdraw his resignation, but DOL declined to allow
him to do so, and his employment was terminated on October 1, 2004.
(See id. at ¶¶ 18-20.)

Mamman appealed his termination to the MSPB, alleging that
DOL's refusal to allow him to withdraw his resignation was
motivated by discrimination on the basis of his national origin,
gender, age, and race.  (See id. at ¶ 21.)  That appeal was
identified as MSPB Docket No. NY-0752-05-0024-I-1.  (See id.)
While that appeal was pending but before any hearing occurred, DOL
voluntarily reinstated Mamman with back pay, and the Administrative
Judge, determining that he had jurisdiction over the discrimination
claim notwithstanding the mootness of the personnel action aspect
of the appeal, issued a finding of no discrimination.  (See id. at

¶¶ 22-23; dkt. entry no. 80, Ruymann Decl., Ex. 1, 4-21-05 MSPB
Initial Decision.)

Mamman alleges that after he returned to work, he encountered
"harassment . . . and reprisal for his prior EEO activities," and
sought pre-complaint counseling. (Am. Compl. at ¶ 26.) Mamman was
presented with a notice of proposed removal on April 21, 2005,
setting forth thirty-five specifications of misuse of his
government credit card, four specifications of failure to respond
to his supervisor while on "flexiplace," and twelve specifications
of misuse of his government telephone line. (See id. at ¶ 27.)
Mamman's supervisor issued the final Removal Decision on June 20,
2005, effective July 8, 2005. (See id. at ¶ 28.) He appealed his
termination to the MSPB; that appeal was designated MSPB Docket No.
NY-0752-05-0323-I-2. (See Ruymann Decl., Ex. 2, 5-25-06 MSPB
Initial Decision.)

The Administrative Judge assigned to that appeal held a
hearing on April 19 and 20, 2006, and considered, as part of the
MSPB administrative record, the proposed removal notice of April
21, 2005, Mamman's reply to the proposed action, and the June 20,
2005 decision notice, as well as other documents the parties
provided during the hearing. (See id.) The Administrative Judge
issued an Initial Decision, dated May 25, 2006, affirming DOL's
personnel action on the basis that the charges of credit card and

telephone misuse and flexiplace violations were sustained.  (See id.; dkt. entry no. 80, Def. Stmt. of Undisputed Facts at ¶¶ 62-63 ("Def. Statement").)  The Administrative Judge further found that Mamman had failed to establish his affirmative defenses of discrimination and retaliation.  (See 5-25-06 MSPB Initial Decision; Def. Statement at ¶¶ 64-65.)  Mamman was unsuccessful in his appeals from the 5-25-06 Initial Decision to the MSPB and the Equal Employment Opportunity Commission ("EEOC").  (See Def. Statement at ¶¶ 68-69; Am. Compl., Ex. A, 10-6-06 MSPB Final Order & 12-19-06 EEOC Decision affirming 5-25-06 Initial Decision.)

Mamman filed the Complaint in this action on June 15, 2006, seeking review of the finding of no discrimination in light of his claim that "DOL's sole reason for not accepting the withdrawal of his resignation was to discriminate against him as compared to younger, non-Nigerian and female employees, and to discriminate against him based on his prior EEO activity."  (Dkt. entry no. 1, Compl. at ¶ 22.)

## II.  **Proposed Removal, Mamman's Reply, and Decision**

Marlene Williams, Mamman's first-line supervisor, gave Mamman a proposed removal notice dated April 21, 2005.  (See dkt. entry no. 81, Sec. Decl. of Andrew Ruymann, Ex. A, Certified Administrative Record of MSPB in MSPB Dkt. No. NY-0752-05-0323-I-2 ("MSPB Record 1") at 2850-56.)  The notice provided three reasons

for the removal, including Mamman's: (1) misuse of a federal government credit card on 35 separate occasions between July 1, 2002, and July 20, 2004, by taking unapproved and unauthorized cash advances; (2) lack of response to supervisors' phone calls and emails while working on flexiplace on March 18, 2003, April 17, 2003, June 19, 2003, and August 13, 2004; and (3) misuse of a federal government telephone line, provided at his residence for his use while on flexiplace, on 12 separate occasions on December 27, 2002. (See id. at 2850-57.)

The proposed removal notice gave specific information about Mamman's misuse of the government credit card: (1) the misuse was confirmed by the credit card's statements; (2) the misuse was recurrent; (3) the identified cash withdrawal transactions were neither authorized nor approved; (4) Mamman had acknowledged the misuse at an earlier MSPB hearing, where he stated the only consequence he would face was removal of the card; (5) it is improper to use the government credit card for anything other than to procure official, approved government travel and to pay attendant expenses; (6) use of the government credit card for any other purposes is unauthorized and improper; (7) Mamman used the government credit card to withdraw cash from automated teller machines in transactions not associated with official government travel; (8) the withdrawals were never approved or authorized as

expenses on travel vouchers; (9) printed on the face of the card was the notice that the card was "For Official Government Travel Only"; and (10) Mamman had received additional notice about use restrictions on the government credit card in an agency newsletter issued in June 2002, as well as in DOL's manual, which states that use of the card to obtain cash advances is limited to authorized travel. (See id. at 2852-53.)

Williams advised Mamman in the notice that she had considered several factors when deciding to propose his removal, including that (1) he was informed about what constituted appropriate use of the government credit card and equipment, and that he was aware of his obligation to respond to supervisory instructions; (2) Mamman, as an Equal Opportunity Specialist, was responsible for investigating and addressing improprieties of employers; (3) the three reasons enumerated above demonstrated Mamman's lack of integrity and failure to act responsibly and led to her conclusion "that proposing [Mamman's] removal will promote the efficiency of the Agency"; and (4) "the nature and extent of [his] actions indicates [his] potential for rehabilitation is meager." (Id. at 2854.)

The proposed removal notice informed Mamman that (1) he had ten calendar days from receipt of the notice to reply; (2) he could submit for consideration a written request for an extension of time

to reply; (3) he and his representative could reply orally and in writing and submit documentary evidence; (4) any reply or request for an extension must be provided to Michelle Hodge, the deciding official; (5) full consideration would be given to any reply before a final decision was made; (6) he and his representative would be given a reasonable amount of time to review materials and prepare a reply; (7) the material upon which the proposed removal was based was attached to the notice provided; (8) Mamman would be notified in writing of the decision on his case as soon as possible after the end of the ten calendar day reply period; (9) Mamman would remain at full pay status, subject to approved leave requirements, while the decision on the proposal was pending; and (10) if he needed further explanation, he should contact an identified person. (See id. at 2853-54.) Both Mamman and his attorney submitted written responses, dated May 23, 2005. (See 5-25-06 MSPB Initial Decision at 6.)

Mamman responded with: (1) allegations that the proposed removal was discriminatory and constituted intentional retaliation in response to his EEO activity and filing of an MSPB appeal; (2) assertions that six other employees who had misused their government credit cards, all of whom were women, younger, and of a different national origin, were treated more favorably than he; (3) complaints that he had not been given the materials he needed to

10

perform assignments since reporting back to work; (4) allegations that he was not given either a verbal warning or a written reprimand about misuse of the government credit card, as some other employees received, and that his supervisors targeted him for termination; (5) an acknowledgment that he had misused the government credit card; (6) an apology for that misuse and a promise it would not be repeated; (7) an assertion that he did not profit from the misuse; (8) a claim that DOL did not provide him with some of the documents upon which the charge of misuse was based; and (9) a claim that he did not fail to respond to supervisors' calls or emails. (See MSPB Record 1 at 2777-83.)

Hodge issued her decision in a memorandum dated June 20, 2005, determining that Mamman should be removed from federal service. Hodge provided the memorandum to Mamman, wherein she referenced the proposed removal notice of April 21, 2005, and informed Mamman that: (1) she gave full and careful consideration to the replies submitted by Mamman and his attorney; (2) based on her review, she sustained all the reasons and specifications provided in the April 21, 2005 proposed removal notice; (3) she decided to remove him from federal service, effective July 8, 2005; (4) she gave her reason for performing the action as to promote the efficiency of the federal service; (5) she stated that she considered the responses to the proposed removal, the duties and responsibilities

11

of Mamman's position, and all relevant factors, including the pertinent "Douglas Factors", when making her decision; (6) she noted that Mamman's position as Equal Opportunity Specialist required him to conduct, lead, or participate in difficult compliance reviews and investigations of federal contractors; (7) she noted that this position required Mamman to work independently with minimal supervision, visiting facilities and interviewing employees, obtaining and reviewing confidential personnel records, safeguarding confidential information, and representing DOL in a professional manner, with integrity; and (8) she noted that "such integrity includes using government property and equipment only for authorized and appropriate purposes." (Id. at 2764-67.)

Based on the sum total of these considerations, Hodge concluded that Mamman could not be trusted with the responsibilities his position entailed because: (1) he engaged in recurrent, long-term misuse of the government credit card; (2) he failed to respond promptly to his supervisor while on flexiplace; (3) he misused a government telephone line; (4) his actions and behavior undermined her trust and confidence in him; (5) his conduct demonstrated a pattern of inappropriate conduct; and (6) she had lost confidence that he was suited for the position. (See id. at 2765.) Hodge then determined what would be an appropriate penalty, considering "the method and means by which [Mamman]

12

responded to the notice of proposed removal in relating to the relevant 'Douglas Factors.'" (Id.) Hodge stated that this consideration was not a new charge or allegation, but that she considered Mamman's method of reply when "deciding on the appropriate penalty in relation to [his] job level, job responsibilities, contacts with the public, prominence of the position, and potential for rehabilitation." (Id.)

Mamman had sent his reply to the notice of proposed removal by email to Hodge as well as twenty-three additional persons, both inside and outside the office, using an agency computer to transmit those messages, and then sent copies of the reply to thirty-seven persons, both inside and outside the office, when the notice instructed him to submit the reply to Hodge, as the deciding official. (See id. at 2765-66.) Hodge stated in the notice of removal that she determined that this behavior in submitting his response "demonstrate[d] a lack of integrity and responsibility and potential for rehabilitation and were factors in determining the penalty." (Id.) Hodge also considered Mamman's five years of service, satisfactory performance record, lack of prior formal disciplinary record, and any notifications he was provided concerning the impropriety of his actions. (See id.) Hodge determined that

these factors did not warrant mitigation of the penalty,
in light of the nature and seriousness of [Mamman's]
misconduct, the degree of trustworthiness required by
[Mamman's] position, the detrimental effect the
misconduct has on my confidence in [Mamman's] ability to
perform the duties of [Mamman's] position, and the
potential harm to the agency's effectiveness should the
public perceive a lack of integrity by our employees.

(Id. at 2766.)  The notice of removal informed Mamman of his rights

regarding appeals.  (See id. at 2766-67.)

## III. MSPB Hearing, Initial Decision, and Final Decision

Mamman appealed his removal to the MSPB in a mixed case appeal

and asserted an affirmative defense of discrimination based on

national origin, sex, and age, and another affirmative defense of

retaliation for EEO activity.  (See id. at 3270-73; dkt. entry no.

81, Decl. of Andrew Ruymann, Ex. B, Certified Administrative Record

of the MSPB in MSPB Dkt. No. NY-0752-05-0323-I-2 ("MSPB Record

2").)  The MSPB Administrative Judge held a hearing on the appeal

on April 19 and 20, 2006, and then issued an initial decision on

May 25, 2006, affirming DOL's action.  (MSPB Record 2 at 3778.)

### i.    Testimony at the MSPB Hearing of April 19-20, 2006

Mamman and DOL had the opportunity to call witnesses at the

hearing; Mamman and several agency employees, including Guy

Auguste, Marlene Williams, Michelle Hodge, Rachel Torres, Raymond

Morales, Stephen Sunshine, and Michael Downing, were present to

testify at the hearing.  (See dkt. entry nos. 80-4 - 80-6, Ex. 3

(in three parts), Tr. of 4-19-06, 4-20-06 Hearing in MSPB Dkt. No.
NY-0752-05-0323-I-2 ("MSPB Hearing Tr.").)

### 1. Guy Auguste

Auguste served as Mamman's first-line supervisor for a period
of time before Mamman was removed. (See id. at 11.) He testified
to facts, inter alia, supporting Reason 2 in the notice of proposed
removal, namely that Mamman failed to respond to supervisors' phone
calls and emails while on flexiplace on March 18, 2003, April 17,
2003, June 19, 2003, and August 13, 2004. (See id. at 13-20.)
Auguste also testified that he intended to propose Mamman be
removed for the government credit card misuse, and he had even
written a draft proposed removal notice that had not yet been
approved. (See id. at 21-24.) Auguste testified that he did not
issue the notice of proposed removal to Mamman because "there was
no need, he handed me his resignation." (Id. at 24.) Auguste
testified that, when Mamman later was reinstated to the federal
service, Mamman was placed under the supervision of Williams. (See
id. at 59-60.)

### 2. Marlene Williams

Williams supervised Mamman when he returned to the federal
service after being reinstated. She testified, inter alia, about
the proposed removal notice she issued to Mamman after his return
to DOL. (See id. at 66-99; see also MSPB Record 1 at 2850-57.)

15

### 3.   Michelle Hodge

Hodge was the deciding official on Mamman's removal action, and provided testimony about: the charge that Mamman misused the government telephone line (MSPB Hearing Tr. at 104-07); her decision to make Williams Mamman's supervisor upon his return because she thought it would be better for him to have a new supervisor (id. at 108); what considerations, including the Douglas factors, she took into account when deciding to remove Mamman (id. at 111-13); Mamman's awareness that his credit card use was prohibited by DOL (id. at 116-17); the seriousness of the offenses she found Mamman had committed, as compared to the responsibilities of his position (id. at 111-13); the pattern of a lack of integrity that Mamman's conduct indicated (id. at 113); her reasoning for removing Mamman (id. at 111-17); her consideration of Mamman's potential for rehabilitation (id. at 117); the credit card misuse alone could support Mamman's removal from federal service (id. at 115); the appropriateness of the removal penalty (id. at 111-19); and how her decision would stand even if Mamman had not forwarded his response to individuals outside DOL (id. at 119).

### 4.   Rachel Torres

Torres testified about the audit, which she conducted, that showed Mamman and other employees had misused their government credit cards. (See id. at 208-10.) She also testified that she

16

gave supervisors the records showing the credit card misuse that was revealed through the audit, and provided the supervisors with additional documents about credit card use beyond the initially audited period of July 2003 to July 2004.  (See id. at 214-15.) She testified that she informed Hodge of Mamman's telephone misuse and gave her records supporting both the credit card and telephone line misuse charges against Mamman.  (See id. at 214-15, 239-42.)

### 5.    Raymond Morales

Morales was a Compliance Officer in the same office as Mamman, and he testified that, when working under the flexiplace arrangement, he made telephone calls using a calling card, but did not make calls on the government provided telephone line.  (See id. at 258.)  He testified that he was not accused of misusing his government credit card or telephone line, nor was he accused of failing to respond to supervisors within an appropriate time period while on flexiplace.  (See id. at 260-61.)

### 6.    Stephen Sunshine

Sunshine drafted the proposal and decision letters concerning the discipline of employees charged with credit card misuse in the Northeast Region.  (See id. at 267-68.)  He testified that Harold Busch, the Acting Regional Director, initiated the audit of employee credit card use that uncovered the misuse by some employees.  (See id. at 263.)  He also testified that the officials

who proposed and then decided to discipline the employees reviewed the letters and could change those respective letters before signing them.  (See id. at 281.)

### 7.  Michael Downing

Downing was a former Compliance Officer stationed in the same office as Mamman, as well as the former union representative.  (See id. at 286-86.)  Downing testified that, during a meeting in August 2004 with Mamman and Auguste, Auguste stated he was preparing to issue a Proposed Termination Notice to Mamman, once certain language in the letter was settled.  (See id. at 286-87.)  Downing testified that, at some point during the meeting, Auguste said that no final decision on Mamman's termination had been made, and that Mamman had until August 31st to "come up with a reason – a good reason why we shouldn't issue this letter to [Mamman.]"  (Id. at 297-98.)  Downing also testified that, after this meeting, he met with Hodge, who showed him statements for Mamman's credit card use and informed him that the penalty would not be lessened to a "30 day suspension".  (See id. at 290-92.)

Downing testified about the specifications included in the charge of failing to respond to a supervisor's phone calls and emails while on flexiplace, which were documented by warning letters; Downing stated that these specifications should not have been included as a basis of one of the charges in the proposed

18

removal notice because the specifications should have been removed from Mamman's file.  (See id. at 303, 305-09.)

### 8.   Mamman

Mamman testified about his removal from federal service, including that he returned to work in March 2005 after his reinstatement following his resignation of August 31, 2004, and that Williams issued him a proposed removal notice dated April 21, 2005, which contained three charges: misuse of government credit card, failure to respond to supervisors' phone calls and emails while on flexiplace, and misuse of government telephone line.  (See id. at 325-32, 334.)  Mamman testified at the hearing that he did misuse the government credit card and that he used the government telephone line to call his daughter.  (See id. at 336-37, 348.)

### ii.   Documentary Evidence Submitted During MSPB Hearing

Mamman and DOL submitted documentary evidence to the Administrative Judge as part of the hearing, including: (1) the notice of proposed removal dated April 21, 2005 (MSPB Record 1 at 2850-57); (2) credit card statements documenting the unauthorized cash advances Mamman took out on the government credit card (id. at 2858-86); (3) a notice from DOL advising employees that the government credit card was only to be used for authorized official travel and related purchases, and that improper use may result in discipline (id. at 2887); (4) a memorandum and verbal warnings

19

documenting instances when Mamman failed to respond to supervisors'
phone calls and emails while on flexiplace (id. at 2968-72); (5) an
Employee Guide for the Use of the Travel Charge Card, which stated
that employees were not permitted to make the kind of unauthorized
automated teller machine cash withdrawals that Mamman made (id. at
2977-89); (6) Mamman's written closing argument (MSPB Record 2 at
3832-54); and (7) DOL's written closing argument (id. at 3857-64).

### iii. MSPB Initial Decision

The Administrative Judge sustained the three charges (misuse
of credit card and phone line, and failure to respond to superiors)
against Mamman in the Initial Decision.  The Administrative Judge
sustained specifications 1 through 26 and 28 through 35 relating to
misuse of government credit card, one of the specifications
relating to failure to respond to supervisor's calls and emails
while on flexiplace, and one of the specifications related to
misuse of a government telephone line.  (See id. at 3761-82.)  The
Administrative Judge noted that "[p]roof of a single specification
under a charge is sufficient for the charge to be upheld."  (Id. at
3771, 3773.)

The Administrative Judge determined that, as to Mamman's
affirmative defenses of discrimination based on national origin,
sex, and age: (1) Mamman's proposed comparators were not similarly
situated as required by law; (2) Mamman did not present supporting

20

evidence for his argument that the decisions about appropriate discipline for credit card misuse were made at the regional office level; (3) even if those decisions were made at the regional office level, Mamman had not proved his claim of discrimination; (4) under the circumstances and facts known at the time Compliance Officer Pierre-Louis was disciplined, he was not treated more leniently than Mamman; and (5) Compliance Officer Thompson was removed and did not receive more lenient treatment than Mamman, despite receiving a warning (which Mamman did not receive) in light of her thirty years of federal service (as compared to Mamman's five years) and the far smaller dollar amount of her misuse (as compared to Mamman's).  (Id. at 3773-76.)

The Administrative Judge also found that Mamman failed to establish an affirmative defense of retaliation because: (1) Mamman's June 27, 2005 EEO complaint, which alleged he was not supplied with proper equipment after his reinstatement, was filed after Hodge issued her June 20, 2005 removal notice; and (2) even if Hodge was aware of Mamman's EEO activity before she issued the notice, Mamman did not establish that her decision to remove him was the result of this EEO activity.  (Id. at 3776-77.)  The Administrative Judge examined the record to determine whether the adverse action taken against Mamman was to promote the efficiency of the service, and determined that DOL had established that an

adverse action against Mamman promoted the efficiency of the service because: (1) Mamman's behavior regarding his misuse of the government credit card "demonstrated his lack of concern about adhering to requirements"; (2) Mamman's "delay in responding to Mr. Auguste's call on August 13, 2004 demonstrated that he did not take seriously the need to be available to his supervisor"; and (3) "the personal call that [Mamman] made on December 27, 2002 resulted in a charge that [DOL] would not otherwise have incurred."  (Id. at 3777.)

The Administrative Judge determined that Hodge erred in considering that Mamman sent his reply to individuals other than herself.  (Id. at 377-78.)  Accordingly, the Administrative Judge made her own assessment of the reasonableness of the penalty applied to Mamman, considering Mamman's five years and seven months of federal service, Hodge's acknowledgment that Mamman's work was satisfactory and he had no prior formal disciplinary record, Mamman had paid his bill on time, and Mamman's apology for misusing the card.  (Id. at 3778.)  The Administrative Judge found that Mamman's proven misuse, having taken place on an almost monthly basis for two years and totaling $17,670 notwithstanding the fact that "the card stated it was for official use only", was a serious offense.  (Id.)  Citing Douglas v. Veterans Administration, 5 M.S.P.R. 280 (1981), the Administrative Judge stated that, "given the record as

22

a whole, I find that the penalty of the removal is within the limits of reasonableness.  See Douglas, 5 M.S.P.R. at 306."  (MSPB Record 2 at 3778.)

### iv.  MSPB Final Decision

Mamman sought review of the Administrative Judge's Initial Decision, and on October 6, 2006, in a Final Order, the MSPB denied his Petition for Review of the Initial Decision of May 25, 2006, making that Initial Decision the final decision of the MSPB.  (See id. at 3884-87.)  Mamman then appealed from the Final Order to the EEOC, as procedure for mixed case appeals requires.  On December 19, 2006, the EEOC Office of Federal Operations issued a decision concurring with the Final Order of the MSPB finding no discrimination.  (See dkt. entry no. 80-15, Decision, 2006 WL 3832866, at *2 (E.E.O.C. 2006).)

## IV.  Findings of Fact

Mamman was born in 1958.  (Mamman Test.)[2]  During his tenure at DOL, Mamman at times worked from home with the use of flexiplace, which included a dedicated government telephone line. (Id.)  DOL issued Mamman a government travel credit card, which he misused, as was revealed through an unauthorized charges audit.

---

[2] References to testimony are to the testimony of witnesses at trial.

(See id.; see also P-1; P-2.)[3] After the misuse was revealed,
Auguste discussed the issue with Mamman and Downing, but Mamman
elected to not respond and was told he would be given an
opportunity to "provide reason why removal should not be proposed."
(P-13.)  During this discussion, Auguste did not mention telephone
misuse or Mamman's failure to previously respond to his
supervisors.  (Mamman Test.)

Mamman submitted a resignation letter on August 31, 2004,
effective October 1, 2004.  (P-14.)  Following submission of his
resignation, Mamman investigated the penalties applied to other
employees who had misused their government travel cards and
attempted to withdraw the resignation.  (Mamman Test.)  DOL refused
to accept his withdrawal of the resignation.  (See id.)  Mamman did
not voluntarily leave DOL on October 1, 2004, and later appealed
DOL's refusal to accept his withdrawal of the resignation to the
MSPB.  (See id.)

Mamman was reinstated on March 10, 2005, effective March 13,
2005, with back pay, during the appeal.  (P-23.)  He worked under a
new supervisor, Williams.  (Mamman Test.)  Mamman soon asserted
that he was not being given the work tools he needed to do his job,
as he had been given before leaving.  (P-25; P-26.)  Mamman filed

---

[3] All exhibit references are to exhibits received in evidence
at trial.

an EEO complaint that his civil rights were being violated through retaliation for his former complaint to the MSPB. (See Mamman Test.; P-29.)

Hodge had a discussion with Williams about the need to institute some disciplinary proceeding against Mamman for his misuse of government supplies as was revealed in the audit, but Hodge did not tell Williams what the appropriate form of discipline would be. (Hodge Test.) Four days after the April 2005 EEO complaint was filed, Mamman was given a notice of proposed removal that charged him with government travel card misuse, failure to respond to supervisors' emails and phone calls, and misuse of the government telephone line. (P-30.) Williams found the $18,070 in cash withdrawals was serious enough to warrant removal, though the other two offenses would normally also have resulted in some form of discipline. (Williams Test.) Williams issued the notice of proposed removal after she had supervised Mamman for three weeks since his return to work following reinstatement. (Mamman Test.; Williams Test.)

**DISCUSSION**

## I.    Standard of Review

The Court considers both whether (1) to affirm the MSPB's decision regarding non-discrimination at this juncture, and (2) DOL

is entitled to judgment on the age discrimination and retaliation claim.  (See Verdict Form; Motion.)

In reviewing the MSPB decision, the Court is limited to review of the administrative record and must affirm the MSPB decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence".  5 U.S.C. § 7703(c); see Makky v. Chertoff, 541 F.3d 205, 211 (3d Cir. 2008).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  It is more than a "mere scintilla" but may be somewhat less than a preponderance of the evidence.  Id.  The substantial-evidence standard is deferential to the fact finder.  See Makky, 541 F.3d at 210-11.  To determine whether substantial evidence supports an agency's decision, the Court examines the administrative record as a whole.  See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004).  "On questions of law, administrative judgments are generally subject to plenary judicial review."  See Armstrong v. Commodity Futures Trading Comm'n, 12 F.3d 401, 403 (3d Cir. 1993) (citation omitted).

The standard on a motion for summary judgment is well-settled
and will be briefly summarized here as it relates to the age
discrimination and retaliation claim.  Rule 56 provides that
summary judgment is proper if there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of
law.  Fed.R.Civ.P. 56(a).  In making this determination, the Court
must "view[] the record in the light most favorable to the non-
moving party and draw[] all inferences in that party's favor."
United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88,
94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260
F.3d 265, 276 (3d Cir. 2001)).

## II.  Review of the MSPB Decision

DOL argues that the MSPB decision should be affirmed because,
after discovery and a full hearing on the matter, the MSPB
correctly determined that: (1) the three reasons for Mamman's
removal were sustained; (2) Mamman failed to establish his
affirmative defenses of discrimination on the basis of national
origin, sex, or age and retaliation; (3) the adverse action
promoted the efficiency of the federal service; and (4) the penalty
of removal was within the limits of reasonableness, in light of the
record as a whole.  (See dkt entry no. 80-2, Br. in Supp. of DOL's
Mot. for Summ. J. at 32; DOL Supp. Mem. at 22 (citing MSPB Record 2
at 3761-78).)

Mamman opposed the original motion for summary judgment, filed in 2010, with a brief that focused on evidence in the record related to whether "[Mamman] has established a prima facie case of discrimination, based on national origin and reprisal, and has also shown agency pretext." (Dkt. entry no. 85-2, Mamman Opp'n Br. at 4.) Mamman did not discuss non-discrimination issues, nor DOL's request for affirmance of the administrative decision below. The Court concludes that Mamman confused the separate standards that a court applies to discrimination issues (de novo) and to non-discrimination issues (abuse of discretion/arbitrary and capricious/substantial evidence).[4]

Mamman bears the burden of proving DOL's decision was erroneous, as the party seeking to overturn that decision. See Clark v. U.S. Postal Serv., 989 F.2d 1164, 1167 (Fed.Cir. 1993).

_____

[4] Compare id. at 2-3 ("the statute clearly contemplates and the courts have held that, if they can establish a prima facie case, complainants are entitled to a trial de novo, notwithstanding the results of prior administrative trials. . . . The statute does not contemplate that the district court will serve as an appellate court, reviewing the record of any previous administrative hearings and, on a summary judgment motion, affirm or reverse the EEOC's findings.") (internal citations omitted), with DOL Supp. Mem. at 1-2 ("The district court reviews the non-discrimination claims on the administrative record presented to the MSPB. Pursuant to 5 U.S.C. § 7703(c), a district court will affirm the MSPB's determination unless it is shown to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.") (citation omitted).

When reviewing an agency decision, the Court "will defer to the MSPB decision unless the penalty is so harsh or disproportionate to the offense as to be an abuse of discretion." Cohen v. Austin, 861 F.Supp. 340, 343 (E.D. Pa. 1994). Further, "[r]eviewing courts should not generally inquire into the wisdom of the agency's personnel decisions or substitute its own judgment for that of the agency when considering personnel decisions because such decisions are usually within the competence and discretion of the executive officials." Id.

**i.  Evidence of Mamman's Misconduct**

The Administrative Judge appropriately examined the record and identified what evidence produced by DOL supported each of the charges against Mamman.

The Administrative Judge determined that DOL had presented evidence that Mamman misused his government credit card. Specifically, the Administrative Judge pointed to the monthly credit card statements for the period of July 2002 to July 2004, as well as Mamman's admission that he did misuse the card. (See MSPB Record 2 at 3767.)  Accordingly, the Administrative Judge found that DOL had established that Mamman misused his government credit

card by taking unauthorized cash advances in the amount of $17,670 between July 2002 and July 2004.  (See id.)[5]

The Administrative Judge determined that DOL had proven one out of four specifications charging Mamman with not responding to his supervisor in a timely manner on August 13, 2004.  The Administrative Judge reviewed the documentary evidence submitted in support of each specification and determined that some were unclear as to date or time of the attempts to contact Mamman and one should have been removed from Mamman's file.  (See id. at 3768-70.)  The fourth specification about August 13, 2004, however, had several emails documenting Mamman's failure to respond to Auguste's repeated attempts to contact Mamman between 10:05 AM and 11:05 AM. (See id. at 3770-71.)  Because DOL had made no representation to Downing that these documents would be removed from Mamman's file, the Administrative Judge determined DOL could rely on the documents to support the fourth specification and so sustained the charge on that basis. (See id. at 3771 ("As noted above, proof of a single specification under a charge is sufficient for that charge to be

---

[5] There are some differing accounts as to the exact amount Mamman withdrew through cash advances, but this is immaterial to the Court's analysis as Mamman readily conceded his misuse of the government travel card as demonstrated through the documentation of unauthorized withdrawal transactions.  (Compare Williams Test. ($18,070), with MSPB Record 2 at 3767 ($17,670), and Am. Compl. at ¶ 16 ("unauthorized cash advances . . . in excess of $6,000").  See MSPB Record 1 at 2777-83 (Mamman acknowledged the misuse and apologized).)

sustained." (citing Burroughs v. Dep't of Army, 918 F.2d 170, 172 (Fed.Cir. 1990))).)

The Administrative Judge sustained one of DOL's twelve specifications in support of the charge that Mamman had misused his government phone line, specifically that pertaining to the call to his daughter while on flexiplace on December 27, 2002. (See id. at 3772-73.) DOL argues that other evidence in the administrative record (i.e., the telephone bill provided by DOL) also supports the specification. (See DOL Supp. Mem. at 24 (citing MSPB Record 1 at 2892).) The Administrative Judge noted that the document shows that eleven long distance calls were placed on Mamman's phone line on December 27, 2002, but that DOL failed to connect any of these calls to the persons or business they concerned. (See MSPB Record 2 at 373.) Thus, relying on Mamman's admission that he called his daughter in Utah on the government phone line on personal business, the Administrative Judge found that only a single specification was sustained. (See id.) Nonetheless, as the Administrative Judge noted, a single specification alone is sufficient for upholding a charge. (See id.)

The MSPB's decision as to the evidence of Mamman's misconduct is rational in light of the evidence cited in the decision and present in the record. The Administrative Judge found that each charge was supported by a record that a reasonable person would

accept as adequate to conclude that Mamman had committed misconduct.

### ii. Efficiency of the Federal Service

A federal agency may take an adverse action "against an employee only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). The Administrative Judge found that DOL had established that the adverse action taken against Mamman promoted the efficiency of the federal service. (See MSPB Record 2 at 3777.)

The government credit card explicitly indicated it was for official use only. (See id.) DOL produced a statement of charges from the government credit card used by Mamman that showed his misuse almost every month for two years. (See id.) Relying on this evidence, the Administrative Judge found that Mamman's credit card misuse "demonstrated his lack of concern about adhering to requirements." (Id.) The Administrative Judge further found that Mamman's "delay in responding to Mr. Auguste's call on August 13, 2004 demonstrated that he did not take seriously the need to be available to his supervisor." (Id.) Finally, the Administrative Judge found that "the personal call that [Mamman] made on December 27, 2002 resulted in a charge that [DOL] would not otherwise have incurred." (Id.)

DOL argues, relying on the April 21, 2005 proposed removal notice by Williams and the Final Removal Decision by Hodge, that Mamman's work as an Equal Opportunity Specialist

> required him to work independently on sensitive matters and to conduct himself in a professional manner with the utmost integrity. His conduct, notably his long-term misuse of the government travel credit card, demonstrated a pattern of inappropriate conduct, undermined the trust of his superiors, showed a lack of integrity and indicated that he could not be entrusted with the responsibilities of his position as an Equal Employment Opportunity Specialist.

(DOL Supp. Mem. at 25.) In light of the effect that Mamman's actions had on the confidence his superiors placed in him, DOL argues that the MSPB's decision that this action promoted the efficiency of the federal service was "rational, in accord with law and supported by substantial evidence on the record." (Id. at 26.)

Mamman's actions incurred costs for DOL that would not otherwise have been incurred; his misuse of government equipment and failure to timely respond to his superiors also demonstrated his lack of concern about fulfilling his responsibilities. (See MSPB Record 2 at 3777.) Thus, the Court concludes that the MSPB's decision was rational, in accord with the law, and supported by such evidence as a reasonable person would accept to conclude that Mamman's removal promoted the efficiency of the federal service.

### iii. Reasonableness of the Penalty

The Administrative Judge examined the record and decided to perform a de novo analysis of the reasonableness of the penalty imposed, rather than deferring to the analysis applied by DOL. (See id. at 3777.)

> Where all of the agency's charges are sustained, but some of the specifications under the charges are not sustained, the agency's penalty determination is entitled to deference and should be reviewed only to determine whether it is within the bounds of reasonableness. However, if the deciding official did not give appropriate consideration to relevant factors, the Board need not defer to the agency's penalty determination. Further, it is error for the agency to rely on matters affecting the penalty it imposes without including those matters in the proposal notice. The Board may remedy such an error on appeal by performing its own analysis of the reasonableness of the penalty.

(Id. at 3777-78 (internal citation omitted).) Relying on relevant case law, the Administrative Judge performed the analysis and determined that, "[g]iven the record as a whole, I find that the penalty of removal is within the limits of reasonableness." (Id. at 3778.)

Douglas v. Veterans Administration, 5 M.S.P.R. 280 (1981), provides the factors to be considered when determining the appropriateness of a penalty. See Johnson v. Dep't of Treasury, 429 Fed.Appx. 964 (Fed.Cir. 2011). The non-exhaustive list of factors includes:

(1) [t]he nature and seriousness of the offense, and its
relation to the employee's duties, position, and
responsibilities, including whether the offense was
intentional or technical or inadvertent, or was
committed maliciously or for gain, or was frequently
repeated;
(2) the employee's job level and type of employment,
including supervisory or fiduciary role, contacts with
the public, and prominence of the position;
(3) the employee's past disciplinary record;
(4) the employee's past work record, including length of
service, performance on the job, ability to get along
with fellow workers, and dependability;
(5) the effect of the offense upon the employee's
ability to perform at a satisfactory level and its
effect upon supervisors' confidence in the employee's
ability to perform assigned duties;
(6) consistency of the penalty with those imposed upon
other employees for the same or similar offenses;
(7) consistency of the penalty with any applicable
agency table of penalties;
(8) the notoriety of the offense or its impact upon the
reputation of the agency;
(9) the clarity with which the employee was on notice of
any rules that were violated in committing the offense,
or had been warned about the conduct in question;
(10) potential for the employee's rehabilitation;
(11) mitigating circumstances surrounding the offense
such as unusual job tensions, personality problems,
mental impairment, harassment, or bad faith, malice or
provocation on the part of others involved in the
matter; and
(12) the adequacy and effectiveness of alternative
sanctions to deter such conduct in the future by the
employee or others.

Douglas, 5 M.S.P.R. at 305.

Hodge considered the factors provided above when determining

the appropriate penalty, but she also considered the fact that

Mamman sent his reply to the proposal of removal to persons outside

of the agency.  (See MSPB Record 1 at 2764-67.)  At the MSPB

hearing, Hodge testified that she would have decided to remove

Mamman as the penalty, even if she had not considered the fact that

he sent his reply to inappropriate persons.  (See MSPB Hearing Tr.

at 191 ("Q: Well, would your decision – the ultimate decision to

remove him, would that have been different if he had not [so sent

his reply]? A: No, that just reinforced my determination.").)

The Administrative Judge determined that Hodge's consideration

of Mamman's reply was in error, but, upon conducting her own

assessment of the case, she determined that the penalty was

reasonable.  (See MSPB Record 2 at 3778.)  The Administrative Judge

considered several factors, including: Mamman's five years and

seven months of federal service; his satisfactory work record; his

lack of a formal disciplinary record; his apology for misusing the

credit card; the fact that Mamman paid the credit card bill on

time; and, against all of this, the seriousness of Mamman's misuse

of his credit card, withdrawing significant amounts over a long

period of time, even though the card stated it was only for

official use.  (See id.)  Finding the misuse to be serious,

regular, and significant and in light of the record as a whole, the

Administrative Judge found the penalty of removal was within the

limits of reasonableness, and thus affirmed the agency's action.

(See id.)

This decision is rational, in accordance with the relevant law, and supported by substantial evidence from the record. As such, the Administrative Judge's determination will be affirmed as to the reasonableness of the penalty of removal.

### iv.  Action Not Contrary to Law

Mamman has not pointed to specific errors of law within the Administrative Judge's decision, nor any other discrepancies in the record that demonstrate the decision as a whole was contrary to law, rule, or regulation.  The Administrative Judge considered and, ultimately, rejected Mamman's affirmative defenses to sustain DOL's removal of Mamman from federal service.  (See id. at 3761-78.)  The burden is on Mamman to demonstrate error that justifies overturning the decision of the MSPB.  See 5 C.F.R. § 1201.56.  DOL has demonstrated that substantial evidence supports the MSPB decision, and Mamman has failed to show that the decision was not in accordance with law.  See id.  Accordingly, the Court affirms the MSPB's decision to uphold Mamman's removal from federal service.

### III.  Age Discrimination and Retaliation Claims

### i.  Age Discrimination Claim

Mamman claims in the Amended Complaint that DOL removed him with an improper motive of "discrimination on the basis of . . . age".  (Am. Compl. at ¶ 55.)  As reflected in the evidence adduced at trial, however, Mamman is unable to prove that such

discrimination could properly be demonstrated or inferred, or that DOL's legitimate reasons for the removal were pretextual.

A claim of discrimination on the basis of age requires that Mamman demonstrate that he: (1) was over forty, (2) was qualified for the position in question, (3) suffered from an adverse employment decision, and (4) was replaced by someone sufficiently younger to permit a reasonable inference of age discrimination. See Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004). Mamman can prove discrimination through either direct evidence of intent to discriminate (i.e., explicit statements admitting discriminatory animus), or through inference from the existence of other facts. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 n.4 (2009).

Once this is established, DOL then bears the burden of production in identifying "a legitimate non-discriminatory reason for the adverse employment action." Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009). This burden of production is "relatively light", and DOL need only present such evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the removal. Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006). DOL is not required to prove that "the articulated reason actually motivated its conduct." Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013)

(internal citation omitted).  The burden of production then returns

to Mamman to show, with circumstantial or direct evidence,  that

DOL's proffered rationale is merely pretext for age discrimination

by either: (1) discrediting the proffered rationale, or (2)

adducing evidence that discrimination was more likely than not a

motivating or determinative cause of the adverse employment action.

See Ullrich v. Sec'y of Veterans Affairs, 457 Fed.Appx. 132, 138

(3d Cir. 2012); Smith, 589, F.3d at 690.

Mamman is within the protected class of persons over 40 and he

was removed by DOL.  (Mamman Test.)  He had previously held the

position with no disciplinary actions in his file and only received

positive performance reviews, so he is otherwise qualified for the

position.  (Id.)  However, Mamman presented neither witness

testimony nor documents at trial showing either direct or indirect

evidence of intent to discriminate.  DOL established a legitimate,

non-discriminatory reason for Mamman's removal in his history of

government credit card misuse and noted instances of government

telephone line misuse and failure to respond to his supervisor.

(See Auguste Test.; Mamman Test.; Williams Test.; Hodge Test.; D-6;

D-9.)  Mamman failed to satisfy the "difficult burden" of showing

pretext behind this legitimate reason.  Carlson v. Twp. of Lower

Alloways Creek, 452 Fed.Appx. 95, 100 (3d Cir. 2011) ("To survive

summary judgment, a plaintiff must put forward such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.") (internal citation and quotation omitted).  Mamman failed to present evidence of any such incoherencies in the DOL's reason for his removal.  Thus, even assuming arguendo that Mamman could establish a prima facie case of discrimination, Mamman has not demonstrated that DOL's legitimate reason for his removal is pretext for age discrimination and his claim of age discrimination must fail.

**ii.  Retaliation Claim**

Mamman also claims that DOL discriminated against him because of his prior EEO activity, specifically that he was terminated from his employment because he filed a complaint with the MSPB.  (See Am. Compl. at ¶¶ 49-52.)

> The ADEA protect[s] employees who attempt to exercise
> the rights guaranteed by the Act against retaliation by
> employers.  To establish a prima facie case of
> retaliation, a plaintiff must show that: (1) he or she
> engaged in a protected employee activity; (2) the
> employer took an adverse employment action after or
> contemporaneous with the protected activity; and (3) a
> causal link exists between the protected activity and
> the adverse action.  Activities protected from
> retaliation include opposing any practice made unlawful
> by . . . the ADEA; making a charge of employment
> discrimination; or testifying, assisting or
> participating in any manner in an investigation,
> proceeding or hearing under . . . the ADEA.  A plaintiff
> may establish the requisite causal link between the

protected activity and the retaliatory act by, for
            example, showing "temporal proximity" or a pattern of
            ongoing antagonism sufficient to give rise to an
            inference of retaliation.

Ullrich, 457 Fed.Appx. at 139 (internal citations omitted); see

Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) ("when only

a short period of time separates an aggrieved employee's protected

conduct and an adverse employment decision, such temporal proximity

may provide an evidentiary basis from which an inference of

retaliation can be drawn").

        Mamman has failed to present a prima facie case of retaliation

under the ADEA.  While he made complaints to the EEOC and MSPB and

was subsequently terminated by DOL, Mamman has not presented proof

of a causal connection between the events.  Temporal proximity is

not applicable because the process of discipline that resulted in

Mamman's termination had begun before any complaints were made.

(Mamman Test.)  Auguste first indicated that removal was the

appropriate penalty for Mamman's government travel card misuse in

August of 2004.  (Id.)  Following this, Mamman attempted to short

circuit the disciplinary process by submitting a resignation, which

he later sought to withdraw; DOL's refusal to accept Mamman's

withdrawal of the resignation led to Mamman's appeal to the MSPB,

after his removal had already been presented as the appropriate

punishment for his previous misbehavior.  (Id.)

Mamman did not prove by a preponderance of the evidence that DOL's adverse action against him was caused by his complaint in October 2004 to the MSPB. Rather, as demonstrated by the evidence adduced at trial, Mamman's misuse of the government credit card and phone line and his failure to respond to his supervisor were the causes of his removal. (See Mamman Test.; Hodge Test.; Williams Test; P-14; P-15.) DOL had already determined that the appropriate discipline was removal in August of 2004, which was only not implemented because Mamman submitted his resignation. (P-15 ("Per our meeting this morning Tuesday, August 31, 2004 with you, your union representative and I on [the] reason why [your] removal should not be proposed for misuse[] of the Government Credit Card, you elected to resign in lieu of termination. Resignation will [be] effective as of October 1, 2004.") (emphasis added).)

Mamman presented no evidence at trial through witnesses or documents showing that DOL's motivation for the adverse action was to retaliate against him for his prior protected activity. Having failed to demonstrate a causal link through proximity or a pattern of antagonistic behavior or other evidence indicating a retaliatory motivation, Mamman cannot establish that the adverse action DOL initiated against him was retaliation for his protected activity.

**CONCLUSION**

For the reasons set forth supra, the Court will grant summary judgment in favor of DOL on the non-discrimination issues, and affirm the MSPB's decision sustaining Mamman's removal. The Court will issue an appropriate Order and Judgment.


                                  s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge


Dated:     June 26, 2013